UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

SYLVESTER B. PORTER, )
)
Petitioner, )
)
vs. ) Case No: 1:18CV226 HEA
)
JASON LEWIS, )
)
Respondent. )

**OPINION, MEMORANDUM AND ORDER**

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No.1] on September 13, 2018. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted [Doc. No. 16] on February 21, 2019. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons explained below, the Response to the Order to Show Cause Why Relief Should not be Granted is well taken and the petition will be dismissed.

**Procedural Background**

Petitioner was found guilty of two counts of first-degree statutory sodomy and one count of first-degree child molestation. The state trial court granted

Petitioner's motion for acquittal as to the first-degree child molestation. Petitioner was sentenced to two concurrent sentences of 25 years' imprisonment in the Missouri Department of Corrections. Petitioner appealed his convictions and sentences to the Missouri Appellate and Supreme Courts. The Missouri Supreme Court summarized the relevant facts in its Opinion affirming the judgment:

Porter managed a rooming house where A.L. rented a room for herself and her three-year-old daughter, K. W. Porter, also known as "J-Money," had a room at the boarding house.

> One weekend, K.W.'s grandmother took care of K.W. while A.L. was away. Grandmother awakened from a nap and discovered that K.W. was gone. Grandmother found K.W. in Porter's room. K.W.'s pants were off, and Porter was shirtless. Porter's head was between K.W.'s legs.

Grandmother removed K.W. from Porter's room. K.W. told Grandmother that Porter was "sniffing around down there" and "messing with her bottom part." When A.L. returned approximately one-half hour after the incident, K.W. told A.L. that Porter touched her "kookoo," which was K.W.'s word for her vagina. A.L. then confronted Porter, who denied touching K.W. K.W. overheard Porter's denial and told him "yes you did, you touched my kookoo." A.L. called the police.

Grandmother later described Porter's actions to a children's division employee in terms of performing oral sex on K.W. Approximately two weeks later, K.W. told a forensic interviewer at the Child Advocacy Center (CAC) that Porter put his hand in her private part, touched her private part with his tongue, and put his private part on her face near her eye. The interview was recorded and admitted into evidence at trial.

The State charged Porter with two counts of first-degree statutory sodomy for touching K.W.'s vagina with his hand (Count I) and with his tongue (Count II). The State also charged Porter with one count of first-degree child molestation for touching K.W.'s head with his penis (Count

III).

K.W. was five years old when she testified at Porter's trial. K.W. testified that Porter touched her private part with his hand but not with any other part of his body.

K.W. also testified as follows:

Q: K.W. can you say whether J-Money really touched you?

A: Huh-huh.

Q: Did he really touch you or not?

A: Not.

Q: He didn't touch you?

A: (Shakes head.)

Q: Or he did touch you?

A: He did.

Q: He did.

A: (Nods head.)

A jury convicted Porter on all three counts. Porter filed motions for judgment of acquittal on all three counts on grounds that there was insufficient evidence to convict because K.W.'s testimony was contradictory and uncorroborated. The circuit court sustained Porter's motion as to the child molestation charge (Count III) but overruled the motions as to the statutory sodomy charges (Counts I and II). The circuit court sentenced Porter to two

concurrent sentences of 25 years in prison.

Petitioner raised two points on appeal to the Missouri Supreme Court. He asserted that there was insufficient evidence to support his convictions on Counts I and II because K.W.'s testimony was inherently contradictory and lacked corroboration.

Petitioner also filed a post-conviction Rule 29.15 Motion. The Motion Court denied the motion, as did the Missouri Court of Appeals.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States

Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**Statute of Limitations**

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus. That window opens at the conclusion of direct review. The window closes a year later. Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28 U.S.C. §2244(d) (1) (A); *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), *cert. denied*, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri

Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing.

**Ineffective Assistance of Counsel**

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, “counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,” and the “burden to show that counsel's performance was deficient rests squarely on the defendant.” *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); see also Strickland, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain “from engaging in hindsight or second-guessing of trial counsel's strategic decisions”) (citation omitted)).

To establish “prejudice,” the petitioner must show “that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency*." Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id*. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. “When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland’s* deferential standard.” *Richter*, 562 U.S. at 105.

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

**Procedural Default**

To preserve a claim for federal habeas review, a state prisoner “must present that claim to the state court and allow that court an opportunity to address [his or her] claim.” *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). “Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted.” *Id.* The federal habeas court will consider a procedurally defaulted claim only “where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.” *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that “some objective factor external to the defense impeded counsel’s efforts to comply with the State’s procedural rule.” *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish

prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.*at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

**Discussion**

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Plaintiff states eight grounds for relief

**Grounds One and Two – Insufficient evidence**

In Grounds One and Two, Petitioner argues the testimony was insufficient because of inconsistencies in the witnesses' testimony and uncorroborated testimony.

The Missouri Supreme Court concluded that the evidence at trial was sufficient for the jury to conclude that Petitioner committed the crimes.

> Porter asserts that K.W.'s testimony regarding whether Porter touched her genitals with his hand or his tongue was so contradictory and inconsistent that it cannot constitute substantive, probative evidence. This argument is

foreclosed by this Court's abolition of the corroboration rule and the destructive contradictions doctrine. Instead, this Court reviews the record to determine whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*Chaney,* 967 S.W.2d at 52.

As Porter notes, there were inconsistencies in K.W.'s trial testimony and out-of-court statements. During K.W.'s redirect examination testimony, she initially denied that Porter touched her vagina with his hand. The prosecutor asked K.W. again if Porter had touched her. K.W. then affirmed that Porter had touched her. Porter asserts that K.W.'s credibility is further damaged by K.W.'s affirmative response to a question asking whether K.W.'s grandmother "told her to say those things" about Porter.

With respect to Count II, Porter asserts the only evidence the State presented regarding Count II was K.W.'s out-of-court statement to the forensic interviewer that Porter touched her private part with his tongue. Porter notes that this statement contradicts K.W.'s testimony that Porter only touched her vagina with his hand.

The inconsistencies in K.W.'s testimony do not render the evidence insufficient. K.W.'s testimony that Porter had touched her genitals with his hand was consistent with out-of-court statements admitted into evidence pursuant to section 491. 075. For instance, K.W. told the CAC interviewer that Porter had touched her vagina with his hand. Although she indicated later in the interview that Porter had touched her genitals only with his tongue, the jury was in the best position to resolve credibility issues. This Court previously has recognized that the trier of fact is generally in the best position to resolve inconsistent testimony by the child victim of a sex crime. *State v. Silvey,* 894 S.W.2d 662,673 (Mo. bane 1995). In addition, there was evidence that K.W. told A.L that Porter had touched her and contemporaneously refuted Porter's denial by stating that Porter had in fact touched her vagina.

The jury resolved the inconsistencies in the context of evidence that placed K.W., without pants, alone with a shirtless Porter in his room with his head between her legs, engaging in activity that Grandmother witnessed and described in terms consistent with oral sex. When the evidence is viewed, as it must be, in the light most favorable to the State, this Court concludes that there was sufficient evidence to permit a rational fact- finder to find

> beyond a reasonable doubt that Porter touched K.W.'s genitals with his hand and with his tongue. There is sufficient evidence to support Porter's convictions for statutory sodomy.

(Respondent's Exhibit W, pp. 9-10.) The Supreme Court set out the applicable law and the elements of the crime. It precisely applied the federal standard of sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner fails to show that the reasoning of the Missouri Supreme Court was unreasonable or contrary to established federal law. The Court articulated its rationale based upon applicable law. Grounds One and Two are denied.

**<u>Ground Three: Trial Court erred in allowing the jury to have access to the Victim's videotaped forensic interview during deliberations</u>**

In Ground Three, Petitioner alleges the trial court erred in allowing the jury to have access to the victim's videotaped forensic interview. The Missouri Supreme Court analyzed this claim:

> In his final point, Porter asserts that the trial court erred in allowing the jury unrestricted access to the videotaped CAC interview of K.W. during its deliberations. Porter contends the trial court should have controlled the jury's exposure to the videotape rather than allowing it to have unlimited access to the tapes. Porter argues that allowing the jury to have unlimited access to the tapes creates a presumption that the jury gave undue weight to the evidence on the tapes.
>
> The record does not demonstrate whether Porter objected to the trial court's decision to permit the jury to view the tapes. Instead, the record reflects that the jury sent a note to the judge asking for "all defense and state exhibits[,] videos, lab reports, etc." and that the judge provided the jury with "the

> items requested." Further, the record shows that, during closing argument, Porter asked the jury to view the tapes. Porter, therefore, had an opportunity to raise the issue of extent of the jury's access to the tapes. The situation in this case is, therefore, similar to *State v. Naucke,* 829 S.W.2d 445 (Mo. banc 1992), in which this Court affirmed a sodomy conviction and rejected the defendant's argument that the trial court erred by allowing the jury to view a videotape of the juvenile victim's interview by sexual abuse specialists. In *Naucke,* the record was insufficient to determine whether the defendant objected to tapes, so this Court concluded that "in the absence of any record showing what occurred at the trial level related to this claimed error, the Court on appeal is obligated to affirm the trial court." *Id.* at 460. Porter's claim, like the one in *Naucke*, is both unpreserved and speculative and, as such, cannot serve as a basis for reversing the judgment of conviction.

(Respondent's Exhibit W, pp. 11-12).

The Supreme Court found that Petitioner had not preserved through objection releasing the tape to the jury. Indeed, counsel for Petitioner encouraged the jury to watch the DVD and ask for the interview. No error occurred, and the Missouri Supreme Court so found.

Nor can Petitioner establish any prejudice from allowing the video to be sent to the jury. It had already been played to the jury during the trial. Petitioner has failed to establish how the Missouri Supreme Court's finding is contrary to established federal law. Ground Three is denied.

**Grounds Fours, five, six, and seven: Ineffective assistance of counsel**

In Grounds four and five, Petitioner claims counsel was ineffective for failing to effectively impeach the victim's grandmother with her prior inconsistent

statement and where she lived in October 2010. Both claims were raised in Petitioner's post-conviction proceeding. They were rejected by the Motion court as meritless. Petitioner only raised ground four in his appeal of this ruling. Ground five is therefore procedurally defaulted.

With respect to Ground Four, the motion court found this argument without merit because counsel did in fact cross examine grandmother about the inconsistencies. As Respondent points out, counsel argued in closing the inconsistent trial testimony and deposition testimony.

The Missouri Court of Appeals found counsel was not ineffective because of her questioning of grandmother regarding grandmother's inconsistent testimony. While counsel did not specifically recall a strategic decision for not having grandmother read her deposition testimony, the Court concluded that counsel could have decided not to continue to question grandmother because to do so might allow grandmother to further clarify which could be detrimental to Petitioner.

Likewise, the failure to remember any strategic strategy does not render counsel's representation ineffective. The Missouri Supreme Court's conclusion is neither an unreasonable interpretation nor contrary to clearly established federal law. *See Fretwell v. Norris*, 133 F.3d 621, 623-24 (8th Cir. 1998). The Court must ascertain

[w]hether trial counsel performed so deficiently "that counsel was not functioning as the 'counsel' guaranteed [Fretwell] by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064. In addressing that question,

> "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."
> 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). The district court lost sight of this critical admonition, which is perhaps not surprising given the way the evidentiary hearing progressed. Fretwell first presented his side of the ineffective assistance question but did not call trial counsel as a witness. The State called counsel as its only witness. The trial had taken place nine years earlier, and counsel's files were later destroyed in a flood. Yet counsel testified at the hearing without reviewing the extensive state court record, which is part of our record on appeal. Because he was unprepared, counsel was unable to explain, or even recall, the reasons underlying much of his performance before and during trial. The district court repeatedly used counsel's inability to recall as establishing lack of competent performance. This violates the presumption that attorneys perform reasonably:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *see Brant v. Nix*, 58 F.3d 346 (8th Cir.1995). To nullify the distorting effects of hindsight, and to give this presumption its full weight, we will examine counsel's trial tactics and

> strategy as revealed by the state court record because that record best reflects "counsel's perspective at the time."

*Fretwell v. Norris*, 133 F.3d 621, 623–24 (8th Cir. 1998). Ground Four is denied.

**Ground Six: Ineffective assistance of counsel for failing impeach Mother**

Petitioner only raised ground six(a) in his post-conviction appeal. Ground 6(b) is therefore procedurally defaulted.

Petitioner argues in Ground Six(a) that counsel was ineffective for failing to impeach mother with her statement that victim denied Petitioner touched her. The Missouri Appellate Court addressed this issue and concluded it was without merit. Using the *Strickland* standard, the Court found that even though counsel did not specifically ask mother about this statement, counsel did cross-examine mother about inconsistencies in her prior statements and argued the inconsistencies in her closing arguments. The Court found not asking about the specific statement was presumably a matter of trial strategy. The fact that counsel could not specifically remember why she did not ask about this specific statement was not enough to overcome the presumption. Again, this conclusion is not contrary to clearly established federal law. *Id.*

As Respondent correctly observes, Petitioner can show no prejudice for counsel's decision not to ask about the specific statement. Counsel did elicit

testimony from Davis that mother told Davis victim told mother that grandmother had told victim to say Petitioner touched her.

Ground Six(c)-Mother's rental agreement. Petitioner did not raise any questions to counsel at the motion hearing regarding the rental agreement and the motion court concluded it was a collateral matter. Petitioner has failed to demonstrate how the lack of questioning about the rental agreement prejudiced him. Ground Six(c) is denied.

**Ground Seven: Counsel's failure to Object and Request Mistrial during State's Closing Argument**

Petitioner claims counsel was ineffective for failing to object to the State's comparison of Petitioner with a lion stalking and attacking a zebra. Although Petitioner raised this claim in the Motion Court, he failed to raise it in his post-conviction appeal. The claim is procedurally defaulted.

**Ground Eight: Ineffective Assistance of Direct Appeal Counsel**

Petitioner claims his direct appeal counsel was ineffective for not asserting trial court error in admitting victim's statements provided to Dr. Kelly Caddell from a social worker before Dr. Caddell's examination. Petitioner raised this claim in his post-conviction motion but did not raise it in his post-conviction appeal. This claim is therefore procedurally defaulted.

Petitioner knew of all the procedurally defaulted claims but did not raise them in the proper courts. He has not presented any reliable *new* evidence that he is actually innocent of the crimes.

> Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground. A state prisoner may be able to overcome this bar, however, if he can establish "cause" to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error. An attorney error does not qualify as "cause" to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel. Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default. See *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
>
> In *Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and *Trevino v. Thaler,* 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), this Court announced a narrow exception to *Coleman* 's general rule. That exception treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather *2063 than on direct appeal. The question in this case is whether we should extend that exception to allow federal courts to consider a different kind of defaulted claim—ineffective assistance of appellate counsel. We decline to do so.

*Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017).

## Conclusion

Based upon the foregoing discussion and analysis, the Petition for Writ of Habeas Corpus is denied because the claims are without merit or have been procedurally defaulted.

**Certificate of Appealability**

When a district court issues an order under § 2254 adverse to the applicant it "must issue or deny a certificate of appealability." R. Governing Section 2254 Cases in the U.S. Dist. Cts., R. 11. If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court should issue a certificate of appealability if the prisoner has shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*; see also *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (interpreting *Slack* in the following manner: "1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural

default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted").

For the reasons stated in this opinion, the Court finds that Petitioner's third, fifth, six(b) and (c), seven and eight claims are procedurally defaulted. The Court also finds that the denial of Petitioner's other claims one, two, four, six (a) are based on such a clear record and well-settled law that no reasonable jurists would debate that no constitutional right of Petitioner was denied. Therefore, no certificate of appealability will issue in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus, [Doc. No. 1], is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 22nd day of September, 2021.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE